## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DONTE LEMAR PAYTON,                )
                                   )
    Petitioner,                    )
                                   )
v.                                 )      Case No. CIV-19-700-SLP
                                   )
SCOTT CROW,                        )
                                   )
    Respondent.                    )

## <u>O R D E R</u>

Petitioner, Donte Lemar Payton, a state prisoner appearing pro se, filed this action pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. He challenges the constitutionality of his state court conviction and sentence for Manslaughter in the First Degree in Case No. CF-2014-7586, District Court of Oklahoma County, State of Oklahoma.[1] The state district court sentenced Petitioner to life imprisonment with the possibility of parole.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), this matter was referred for initial proceedings to United States Magistrate Judge Suzanne Mitchell who issued a Report and Recommendation [Doc. No. 22] (R&R) denying habeas relief. Petitioner timely filed an Objection [Doc. No. 23] to the R&R. Thus, the Court must make a de novo determination of the portions of the R&R to which a specific objection is made, and may accept, reject,

---

[1] Petitioner was originally charged with Murder in the First Degree. The jury, however, convicted him of the lesser included offense of Manslaughter in the First Degree.

or modify the recommended decision, in whole or in part.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

## I.  **Petitioner's Grounds for Habeas Relief / Objections to R&R**

Petitioner has raised the following grounds for habeas relief:

- •  Ground One: Trial court violated the no contact rule with the jury during deliberations;

- •  Ground Two: Improper communication with jury – invited the avoidance of duty to assess punishment, passing to trial court;

- •  Ground Three:  Ineffective assistance of counsel based on (1) failure to object to the trial court's decision to take the case from the jury; (2) failure to offer statements on Petitioner's behalf at sentencing; and (3) failure to object to other crimes evidence at sentencing;

- •  Ground Four:  Life sentence is excess;

- •  Ground Five: Right to jury's determination – self-defense instruction; and

- •  Ground Six:  Cumulative error.

*See* Petition [Doc. No. 1].  Petitioner raised these same claims on direct appeal of his conviction to the Oklahoma Court of Criminal Appeals (OCCA) and the OCCA affirmed Petitioner's conviction.  *See* OCCA Summary Opinion [Doc. No. 1-9].[2]

## II.  **Petitioner's Objections**

The Court construes Petitioner's Objection as challenging the Magistrate Judge's findings with respect to the claims raised in Grounds One and Two of the Petition, and that

---

[2] In support of each of his grounds for habeas relief, Petitioner includes, as part of his Petition, excerpts of his briefing submissions before the OCCA.

part of his ineffective assistance of counsel claim raised in Ground Three relating to the trial court's decision to take the case from the jury. Review of all other issues addressed by the Magistrate Judge, therefore, is waived. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Petitioner argues that "clear and direct evidence . . . requires this court to Reverse and Remand the matter of sentencing back to the trial court." Obj. at 1. In support, he contends that a "clear violation of procedure of the criminal code occurred . . . ." *Id*. Petitioner argues that the state court judge had several "unauthorized communications" with the foreman of the jury who, in turn, "announce[d] that communication to other jurors." *Id*. at 2. Petitioner references notes the jury sent to the court. Petitioner further references communications the bailiff initiated with the jury. Petitioner contends "[t]he judge announced he would take over the case, through his bailiff, and then took over the case and then sentenced petitioner what he saw fit, contrary to the Fourteenth Amendment to the United States Constitutions [sic] Due Process of law protection." *Id*. Petitioner claims this is a "structural error or plain error." *Id*. at 2-3. Petitioner further argues his counsel was deficient for failing to raise these issues "*on direct appeal*." *Id*. at 3 (emphasis added).[3] Alternatively, he contends, "the combined effect of these errors should result in the modification of petitioner's sentence." *Id*.

---

[3] Although Petitioner frames his objection as based on counsel's failure to raise this issue on direct appeal, Petitioner's appellate counsel did raise these issues on direct appeal. As discussed infra, out of an abundance of caution, the Court has considered Petitioner's objection to be based on trial

III.    **Governing Standard**

Habeas relief is warranted only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "Clearly established law is determined by the United States Supreme Court, and refers to the Court's holdings, as opposed to the dicta." *Washington v. Roberts*, 846 F.3d 1283, 1286–87 (10th Cir. 2017).  If the state court comes to a conclusion "opposite to that reached by the Supreme Court on a question of law" or "decides a case differently than the Court has . . . on materially indistinguishable facts," such a decision is "contrary to" clearly established law.  *Id*. at 1287.  And if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case," the state court's decision is an "unreasonable application" of Supreme Court law. *Id*. (alteration in original).

A state court's factual findings are not unreasonable merely because on federal habeas review the court "would have reached a different result in the first instance." *Johnson v. Martin*, 3 F.4th 1210, 1218 (10th Cir. 2021) (citation omitted).  Instead, the court defers to the state court's factual determinations "so long as reasonable minds reviewing the record might disagree about the finding in question."  *Id*. (citation omitted).

---

counsel's failure to raise an objection at trial – a claim incorporated in his ineffective assistance of counsel claim raised in Ground Three of the Petition.

The resolution of a claim brought pursuant to § 2254 "is highly dependent on the standard of review required by AEDPA." *Wellmon v. Colo. Dep't of Corrs.*, 952 F.3d 1242, 1245 (10th Cir. 2020). "To determine whether Petitioner is entitled to relief, [the court] must analyze what occurred at trial and on appeal, determine what standard the [state court] applied, analyze whether that standard conflicted with clearly established United States Supreme Court precedent, and finally decide whether the [state] court unreasonably applied that standard." *Id.*

## IV. <u>Discussion</u>

### A. <u>Ground One – Improper Contact with Jurors</u>

The state court record reflects that during deliberations, the jury submitted five separate notes to the trial court. As relevant to Petitioner's claim raised in Ground One, the last three notes concerned Petitioner's sentence. Those notes and the trial court's responses follow:

- **<u>Juror Question Three</u>**: WHO DETERMINES THE LENGTH AND SENTENCE FOR A MANSLAUGHTER VERDICT?

    **<u>Trial Court's Response</u>**: THE JURY.

    (Court's Ex. 4)

- **<u>Juror Question Four</u>**: WE HAVE A VERDICT, BUT CANNOT ARRIVE AT A CONSENSUS ON LENGTH OF SENTENCE. NEED ADVICE?

    **<u>Trial Court's Response</u>**: YOU HAVE ALL THE LAW & EVIDENCE WHICH IS PROPER FOR YOU TO CONSIDER.

    (Court's Ex. 5)

- **Juror Question Five**: WE HAVE A VERDICT, BUT ONLY IF ONE JUROR CAN CHOOSE A SHORTER SENTENCE WHICH THE OTHERS DO NOT AGREE WITH. ANY ADVICE?

  **Trial Court's Response**: KEEP DELIBERATING & TRY TO COME TO A CONSENSUS.

  (Court's Ex. 6)

*See* OCCA Order Remanding for Evidentiary Hearing [Doc. No. 1-7] at 3 (quoting Court's Exhibits 4, 5 and 6, respectively).

In the course of his direct appeal before the state courts, Petitioner requested an evidentiary hearing based on an additional communication alleged to have been made to the jury during their deliberations after the fifth and final written question contained in the record had been answered. Petitioner claimed that the trial judge communicated to the jury through the bailiff and told the jurors that the trial judge could sentence Petitioner if the jurors could not agree on punishment. The OCCA determined an evidentiary hearing on this issue was warranted and directed the trial court to hold the evidentiary hearing. *See id*.

At the evidentiary hearing, four members of the jury testified. Additionally, the bailiff, Kalina Webb; the prosecutors, John Salmon and Kelly Collins; and defense counsel, Stacy Smith testified. *See* State Court Record [Doc. No. 20 – conventionally filed], Supplemental Hearing Transcripts of Proceedings, August 1, 2017 (Tr. Vol. I at ____) and August 2, 2017 (Tr. Vol. II at ____).

The foreman, M.R., testified first. M.R. testified that it took the jury approximately one hour to determine guilt. Tr. Vol. I at 15-16.[4] But, the jury could not come to a consensus with respect to the number of years for the sentence to be imposed. The jury was considering, on the high end, a sentence of twenty-five years and on the low end, a sentence of five years. *Id*. at 9-10. This lack of consensus resulted in the jury submitting to the trial court the notes referenced above. M.R. testified that after the trial court's final response the jury continued to deliberate for another thirty minutes or so and then the bailiff came into the deliberation room and said that if the jurors could not reach a decision on the length of the sentence, the judge could do that for them. *Id*. at 13-15; *see also id*. at 25-26. M.R. said that following the bailiff's communication, the jury deliberated for another twenty or thirty minutes before telling the judge that they wanted him to make the sentencing decision. *Id*. at 15; *see also id*. at 26-28. M.R. testified that the jury was "deadlocked" on the issue of sentencing and advised the trial court of the same when brought to the courtroom. *Id*. at 28-29. M.R. testified one juror in particular was a hold out and that juror wanted "such a short sentence that the others didn't feel like it was a fair, a fair decision." *Id*. at 30-31.[5] But M.R. testified that the jury was unanimous in wanting the trial judge to determine the sentence. *Id*. at 31-32.

---

[4] M.R. testified that at the time the jury submitted Question Four (Court's Ex. 5), the jury had unanimously decided that Petitioner was guilty. *Id*. at 19-21.

[5] According to M.R., the juror wanted a sentence between six months and five years. *Id*. at 33-34.

The next juror to testify was C.J.  She initially wanted to impose a sentence of five years, but agreed to come up to ten years during the course of deliberations.  *Id*. at 38-40. C.J. testified that the bailiff had told the foreman that the judge could determine the sentencing and the foreman relayed that to the rest of the jurors.  *Id*. at 42.

According to C.J., the jury unanimously agreed that the judge should "intervene" but she thought the judge was going to join the jury in their deliberations.  *Id*. at 43.  Even after the jury entered the courtroom and the judge explained that he would determine the sentence, C.J. continued to think that the jury would be involved in the sentencing and that the jurors "still had a voice" in the matter.  *Id*. at 44-45.  C.J. understood the sentencing range to be five years to twenty-five years; she did not understand a life sentence was possible.  *Id*. at 45-46.[6]  C.J. would have wanted to continue deliberations if she had understood the judge could sentence Petitioner up to life imprisonment.  *Id*. at 47-48.

C.J. agreed that the jury had reached a consensus that Petitioner was guilty of manslaughter.  *Id*. at 49-50.  C.J. testified that other jurors did not agree with the sentence she wanted to impose (no greater than 15 years).  *Id*. at 55-57.[7]  She reiterated that the maximum sentence being considered by the jurors was twenty-five years.  *Id*. at 60-62; *see also id*. at 65-66.

---

[6] C.J. gave contradictory testimony in this regard.  C.J. testified elsewhere that she understood the sentencing range was five years to life.  *Id*. at 52-53.

[7] The record reflects the jury was instructed that the crime of Manslaughter in the First Degree is "punishable by imprisonment for not less than four (4) years."  *See* State Court Record [Doc. No. 20 – Conventionally Filed], Criminal Appeal Original Record, Vol. II at 174-175, Instruction No. 18.  The jury instruction is a correct statement of Oklahoma law as to punishment.  *See* Okla. Stat. tit. 21, § 715 (2015); *see id*., § 13.1.  Instruction No. 18 further advised the jury as to how eligibility for parole is calculated "[i]f a person is sentenced to life imprisonment."  *Id*.

Another juror, K.L., similarly testified that the bailiff communicated to the foreman that if the jury could not reach a consensus on sentencing, the judge could "take the case for sentencing." *Id*. at 126.  She testified the jury unanimously agreed on the manslaughter conviction and did so approximately thirty minutes into deliberations. *Id*.; *see also id*. at 131.

K. L. thought, like C.J., that in sentencing Petitioner the judge would be bound by the range discussed by the jury. *Id*. at 127.  She testified that had she known the judge could have sentenced Petitioner to life, she would have "stayed longer" to deliberate. *Id*. at 128.  K.L. thought that a sentence of life without parole was "off the table" and that the sentence "could go to . . . 33 or 38 years." *Id*. at 133.

According to K.L., C.J. was the "holdout on the verdict" as to the sentencing issue. *Id*. at 131-32.  K.L. testified that C.J. was "adamant" about a five-year sentence but "gradually "went up." *Id*. at 131.  K.L. testified that if the jurors had more time, they "probably would have come to an agreement" as to sentencing. *Id*. at 139.

The next, and final, juror to testify was K.H.  She recalled the range of punishment being considered by the jury was between five and twenty-five years. *Id*. at 144.  K.H. said the bailiff told the foreman the judge would determine the sentence and the jurors were brought back into court. *Id*. at 144-45.  K.H. did not have any understanding as to what sentence the judge could impose.  *Id*. at 145-46.  But she thought the jury's recommendations would be taken into account.  *Id*. at 146; *see also id*. at 156-57.  K.H. testified the highest sentence any juror wanted was twenty-five years. *Id*. at 159.

K.H. testified that further deliberations might have been helpful. *Id*. at 149. She also testified that she would have been willing to drop her sentencing recommendation. *Id*. at 157. But she agreed that the foreman accurately advised the judge that the jury could not reach a unanimous decision as to sentencing. *Id*. at 151; *cf*. *id*. at 159-60.

Kalina Webb also testified at the evidentiary hearing. She served as the bailiff during Petitioner's trial. Ms. Webb did not remember whether she communicated to the jury that the judge would sentence Petitioner. *Id*. at 177-78.

The prosecutors, John Salmon and Kelly Collins also provided testimony. Mr. Salmon testified about the five written questions sent by the jury and responded to by the trial judge. He did not recall any other communication between the judge and the jury. *Id*. at 102-103. He testified that the jury was subsequently brought into the courtroom and the judge polled the jury as to whether they had reached a verdict as to guilt and whether they had reached a sentence. *Id*. Mr. Salmon remembers a discussion in the judge's chambers with all counsel present about a statutory provision which would allow the judge to take the sentencing from the jury. *Id*. at 105-106. He testified that the judge advised the parties that if the jury were deadlocked as to sentencing, he would exercise that power. *Id*. at 107. Mr. Salmon believed this conversation with the judge took place at the time discussions were being had about a response to the last question from the jury. *Id*. at 108. He understood the judge was going to proceed in this manner and was not surprised when the judge brought the jury into court and made the announcement that he would be invoking the statute and imposing the sentence. *Id*. at 110. Mr. Salmon was not aware of any

communication by the judge to the jury other than the written responses to the jury's questions. *Id.* at 111.

Ms. Collins likewise testified that that she understood the judge was going to confirm the jury was deadlocked and then was going to invoke the statute and impose the sentence. *Id.* at 120. Like Mr. Salmon, Ms. Collins was not aware of any communications the judge had with the jury other than the written notes and responses to those notes. *Id.* at 121. And, like Mr. Salmon, Ms. Collins testified that all counsel were present during the communications with the judge about responding to the jury's questions. *Id.* at 122.

Petitioner's trial counsel, Stacy Smith, was the last witness to testify. Mr. Smith testified that after all parties had agreed upon the response to Question Number 5 (Court's Exhibit 6), the trial judge communicated to counsel in chambers that he had the authority to "take the case from the jury if they could reach a verdict but could not reach a punishment." Tr., Vol. 2 at 3-4, 10-13.[8] Mr. Smith testified he did not know whether the trial judge communicated with the jury about the matter. *Id.* at 4-5. According to Mr. Smith, briefly after the in-chambers discussion with the trial judge, and before he could fully discuss the matter with Petitioner, the trial judge had brought the jury to the courtroom. *Id.* at 5-7, 26.

---

[8] At the evidentiary hearing, the parties' reference to Question Number 5 is, in fact, a reference to the fourth jury question identified in the OCCA's remand order (Court's Ex. 5). Similarly, the parties' reference to Question Number 6 is, in fact, a reference to the fifth and final question identified in the OCCA's remand order (Court's Ex. 6). *See, e.g.*, Tr. Vol. II at 9-10 (reading into the record "Jury Question Number 5").

The OCCA "incorporated and discussed" the evidence presented at the evidentiary hearing in its Summary Opinion affirming Petitioner's conviction. The OCCA found as follows:

> The record shows the jury was told by the bailiff during deliberations that the trial judge would impose sentence if the jury was unable to agree on punishment. This communication occurred after the jury found Appellant guilty of the lesser included offense of first degree manslaughter. At the time, the jury was unable to agree on punishment despite several hours of deliberations. The jury's deadlock on sentencing was evident from the last two jury questions sent to the trial judge during deliberations. The jury foreman then confirmed for the trial judge on the record that further deliberations would not assist the jury in reaching a unanimous decision as to punishment.

OCCA Summary Opinion [Doc. No. 1-8] at 3-4 & n. 4. For purposes of habeas review, these factual findings of the OCCA are presumed to be correct and Petitioner must rebut the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

As the OCCA explained, Oklahoma law provides that if a jury cannot agree on punishment, the judge may impose punishment:

> When a trial judge is faced with a jury that has retired to deliberate and reached a verdict of guilty, and despite 'diligent and sincere efforts, they are unable to agree upon the punishment and so report to the trial judge' then Section 927.1 becomes applicable. The court at that point 'shall require the jury to deliberate further after giving the additional instruction that if they then fail to agree they may so state in their verdict and leave punishment to be assessed by the court.'

OCCA Summary Opinion at 5 (citations omitted).[9] The OCCA determined the trial judge handled the matter in a manner consistent with the statutory directive. *Id*. Although the

---

[9] Section 927.1 provides:

OCCA found the bailiff's communication to the jury was presumptively prejudicial, the OCCA found the State had overcome the presumption of prejudice because the record "show[ed] plainly" that the jury was "hopelessly deadlocked on punishment at the time of the bailiff's unauthorized communication" but the jury had "already unanimously found Appellant guilty of first degree manslaughter." *Id.* at 5-6.

Petitioner premises his first ground for relief on his constitutional right to be present at all critical stages of a trial under the Sixth and Fourteenth Amendments to the United States Constitution. Petitioner challenges as improper the bailiff's ex parte communication to the jury that if they could not reach a verdict as to the sentence to be imposed, the trial judge would sentence Petitioner.[10]

---

> Where the jury finds a verdict of guilty, and fails to agree on the punishment to be inflicted, or does not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly.

Okla. Stat. tit. 22, § 927.1.

[10] To the extent Petitioner premises his claim on a violation of 22 Okla. Stat. § 894, any such violation does not entitle him to federal habeas relief. Section 894 provides:

> After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the district attorney and the defendant or his counsel, or after they have been called.

Okla. Stat. tit. 22, § 894. A violation of section 894, alone, would not constitute grounds for federal habeas relief, as the violation would involve purely a matter of state law. *See, e.g., Hawes v. Pacheco*, 7 F.4th 1252, 1264 (10th Cir. 2021) (on habeas review, federal court does not re-examine state-court determinations on state-law questions and any argument that the state court erroneously interpreted and applied state law does not warrant habeas relief) (citations omitted).

Respondent does not contest that the bailiff's communication with the jury during their deliberations was improper and violated Petitioner's right to be present during a critical stage of trial.   Resp. at 20 ("[T]he bailiff's behavior in this case is no doubt troubling.   Petitioner had the right to be present when the court instructed the jury.   The bailiff's actions violated that right.") (citing *United States v. Gomez*, 67 F.3d 1515, 1527-28 (10th Cir. 1995)).   But Respondent contends that "the OCCA applied the same review for prejudice as federal courts use, placing the burden on the prosecution to establish that the contact with the jury was harmless." *Id*. at 20.   Respondent further argues "[t]he OCCA's factual conclusion on the additional record, that the bailiff's instruction did not change the jury's verdict, is entirely reasonable." *Id*.   Respondent concludes that "[u]nder AEDPA deference, reviewing the OCCA's handling of this record developed in state court, this court cannot find the OCCA's determination of no prejudice on this record was unreasonable.   The OCCA correctly applied governing law, and the record reasonably supports its conclusion." *Id*. at 21-22.

As a threshold matter, the Court must identify the clearly established federal law governing Petitioner's claim that his Sixth and Fourteenth Amendment rights have been violated.   Petitioner does not cite any controlling Supreme Court authority in his Petition, Brief in Support, or Objection.[11]   And Respondent cites only to a Tenth Circuit case, *United*

---

[11] Petitioner attached to his Petition relevant portions of his state court briefing in support of each ground for habeas relief.   Petitioner did not raise additional arguments.   Because he relies solely on briefing submitted as part of his direct appeal, he necessarily did not identify reasons why the OCCA decision was contrary to, or involved an unreasonable application of clearly established federal law, nor did he address how the OCCA decision was based on an unreasonable determination of the facts in light of the evidence presented.   Similarly in his objection, Petitioner

*States v. Gomez*, 67 F.3d 1515, 1527 (10th Cir. 1995). Resp. at 20.[12] In addressing Petitioner's claim, the Magistrate Judge did not identify any clearly established federal law, but summarily concluded that "[t]he decision of the OCCA is neither contrary to, nor an unreasonable application of the law to the facts." R&R at 16.

### 1.   Clearly established federal law under § 2254(d)(1)

The Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment (made obligatory upon the states through the Fourteenth Amendment), require a defendant's presence at every critical stage of a criminal proceeding. *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (recognizing that the "right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but [the Court] ha[s] recognized that this right is protected by the Due Process clause in some situations where the defendant is not actually confronting witnesses or evidence against him."); *see also Illinois v. Allen*, 397 U.S. 337, 338 (1970).

A defendant's right to personal presence at all critical stages of trial is a fundamental right. *Rushen v. Spain*, 464 U.S. 114, 117 (1983). "[A] defendant is guaranteed the right

---

fails to address the governing standards under § 2254(d)(1) and (2). He argues, without citation to any authority, that a "structural error" has occurred giving him an automatic right to habeas relief. *See* Obj. at 2-3.

[12] *Gomez* relies on *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) for the general proposition that "'a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.'" *Gomez*, 67 F.3d at 1527-28 (quoting *Stincer*). In *Gomez*, on direct appeal of a conviction, the Tenth Circuit found the defendant's constitutional rights were violated when the district court answered a question from the jury without the presence of either the defendant or his counsel. The Tenth Circuit further determined, however, that any violation of the defendant's rights was harmless under *Chapman v. California*, 386 U.S. 18, (1966). *Id.* at 1528. As noted, *Gomez* arose in the context of a direct appeal, not on habeas review.

to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Stincer*, *supra*, 482 U.S. at 745.

The Supreme Court has not specifically recognized mid-deliberation communication with a jury as a critical stage of criminal proceedings. *See, e.g., Smith v. Trammell*, No. CIV-09-293-D, 2014 WL 4627225 at *33-35 (W.D. Okla. Sept. 16, 2014) (analyzing issue of trial court's communications with the jury without consulting with counsel and finding, for purposes of applying AEDPA deference, the "absence of Supreme Court authority that jury deliberations constitute a critical stage"); *see also Davis v. McCollum*, No. CIV-16-1347-R, 2018 WL 587238 at *5 (W.D. Okla. Jan. 29, 2018) ("[T]he Sixth Amendment does not grant Petitioner a clearly established right to counsel at the jury deliberations stage."). And the Supreme Court has cautioned the lower courts about framing its cases at "a high level of generality." *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam). Instead, a Supreme Court case must address "the specific question presented by [the habeas petitioner's] case." *Lopez v. Smith*, 574 U.S. 1, 6 (2014); *see also House v. Hatch,* 527 F.3d 1010, 1015 (10th Cir. 2008) ("Supreme Court holdings – the exclusive touchstone for clearly established federal law – must be construed narrowly and consist only of something akin to on-point holdings." (citing *Carey v. Musladin*, 549 U.S. 70 (2006)).

It appears that Petitioner's argument fails on this basis alone – i.e., a lack of clearly established Supreme Court precedent governing Petitioner's claim. *See House*, 527 F.3d at 1017 ("The threshold determination that there is no clearly established federal law is

analytically dispositive in the § 2254(d)(1) analysis. That is, without clearly established federal law, a federal habeas court need not assess whether a state court's decision was "contrary to" or involved an "unreasonable application" of such law."). But assuming, arguendo, that clearly established federal law exists, Petitioner is still not entitled to relief.

As set forth, Respondent assumes a presumption of prejudice applies, citing *Remmer v. United States*, 347 U.S. 227, 451 (1954). Resp. at 20. In *Remmer*, the Supreme Court addressed, on direct appeal of a criminal conviction, the presumption of prejudice that attaches to an improper communication with the jury. The Court held:

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with juror was harmless to the defendant.

*Id*., 347 U.S. at 229. As set forth, the OCCA applied a presumption of prejudice but concluded, after development of the factual record through an evidentiary hearing, that any such presumption was overcome.

The Tenth Circuit has held that on habeas review (as opposed to direct appeal), there is no rebuttable presumption of prejudice. *Stouffer v. Trammell*, 738 F.3d 1205, 1214 n. 5 (10th Cir. 2013) ("The *Remmer* presumption of prejudice does not apply, however, in a collateral review when the state court held an evidentiary hearing and the state's highest court reviewed the claim on its merits and made factual findings."); *Malicoat v. Mullin*, 426 F.3d 1241, 1250 (accord); *see also Perry v. Att'y Gen. of New Mexico*, No. 17-CV-

17

00643-JAP/KK, 2019 WL 1173021 at *15 (D.N.M. Mar. 13, 2019) ("The Tenth Circuit has specifically declined to apply *Remmer* to § 2254 proceedings, holding that the *Remmer* rule is a rule of federal criminal procedure, not a rule of federal constitutional law.").[13]

Instead, a federal court may grant habeas relief only if the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Crease v. McKune*, 189 F.3d 1188, 1192 (10th Cir. 1999) (applying *Brecht* in a habeas case involving an ex parte conversation between a judge and a juror); *see also Malicoat*, 426 F.3d at 1250 (applying *Brecht* standard and listing factors the court may consider to determine whether jury's exposure to extraneous information substantially influenced the jury's verdict); *Betts v. McKune*, No. 11-3907-SAC, 2013 WL 3328747 at *17 (D. Kan. July 2, 2013) (assuming habeas petitioner's right to be present was violated, *Brecht's* harmless error standard applied).

Petitioner fails to identify any error that had a substantial and injurious effect or influence in determining the jury's verdict. The bailiff's contact, though improper, was a

---

[13] To this end, Petitioner's argument that the bailiff's improper communication is a structural error that requires an automatic grant of the writ is erroneous. In *United States v. Cronic*, 466 U.S. 648, 659 (1984), the Court stated that "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." *Id.* at 659. However, *Cronic* does not identify ex parte communications between a judge and jury as a critical stage of trial. And, as set forth, no clearly established federal law supports Petitioner's position that the ex parte communication between the bailiff and the jury occurred at a critical stage of the trial. Moreover, in *Rushen*, the Court acknowledged that the absence of defense counsel during an ex parte communication between a judge and a juror is not a structural error that would require automatic reversal. *Id.*, 464 U.S. at 118-119. The Court noted that in such circumstances, instead of automatic reversal, the court should hold a post-trial hearing to determine the effect of the communication and whether the court can mitigate any constitutional error. *Id.* at 119-20. That is precisely what occurred here.

correct recitation of Oklahoma law. And the factual findings of the OCCA, which Petitioner has not rebutted by clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), establish that at the time of the bailiff's communication, the jury had reached a verdict as to guilt, but was deadlocked as to punishment. Oklahoma law authorizes the trial judge to take the issue of punishment from the jury under these circumstances.

On review, the Court concludes that no clearly established Supreme Court precedent governs Petitioner's claim under 28 U.S.C. § 2254(d)(1). Alternatively, assuming more general Supreme Court pronouncements govern, Petitioner has not shown, under *Brecht*, that he is entitled to habeas relief.[14]

## 2. Unreasonable determination of the facts under § 2254(d)(2)

The Court further finds Petitioner has failed to demonstrate that the OCCA's decision is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2). Petitioner has not shown, by clear and convincing evidence, that the state court erred in determining that any error arising from the bailiff's improper communication or the trial judge's decision to

---

[14] In *Brown v. Davenport*, -- U.S. --, 142 S.Ct. 1510 (2022), the Supreme Court recently held that where, as here, a state court determines that an error at trial did not prejudice a criminal defendant, "a federal court cannot grant relief without first applying both the test th[e] [Supreme] Court outlined in *Brecht* and the one Congress prescribed in the AEDPA." *Id*., 142 S.Ct. at 1517. The Court made clear the two standards are distinct and both must be met. *Id.* at 1520 ("[S]atisfying *Brecht* is only a necessary, not a sufficient condition to relief. AEDPA too must be satisfied."). Because the Court finds Petitioner has not met the *Brecht* standard, the Court need not inquire further as to whether Petitioner has satisfied AEDPA. *Id.* at 1524 ("[A] federal court must deny relief to a state habeas petitioner who fails to satisfy either this Court's equitable precents or AEDPA."); *see also id.* at 1527 ("[I]f a federal court determines that a habeas petition fails because of *Brecht*, there is no need to prolong the matter by formally applying AEDPA as well." (cleaned up)).

sentence Petitioner was harmless.  Petitioner points to no "plain and material" misstatement of the record.  *See Smith v. Duckworth*, 824 F.3d 1233, 1250 (10th Cir. 2016) ("[A] state court's determination of the facts is [not] unreasonable unless the court plainly and materially misstated the record or the petitioner shows that reasonable minds could not disagree that the finding was in error.").  As set forth, the OCCA found that the bailiff's communication to the jury was a proper statement of Oklahoma law.  And a review of the record comports with that finding.  The OCCA further found that prior to taking the issue of sentencing from the jury, the trial judge confirmed that the jury had reached a verdict as to guilt and that the jury was deadlocked on the issue of sentencing.  Again, this Court's review of the record comports with that finding and Petitioner fails to demonstrate, with any evidence, much less clear and convincing evidence as required by § 2254(e)(1), that factual error occurred.

## B.    Ground Two – Constitutional Right to be Sentenced by a Jury/*Allen* Charge

Petitioner further objects to the Magistrate Judge's findings concerning the issue of the trial judge "taking away" the case from the jury.  The Magistrate addressed the OCCA's findings as to this issue and determined that the OCCA's decision was "neither contrary to, nor an unreasonable application of the law to the facts."  R&R at 16.

The OCCA concluded that Petitioner failed to show "error, plain or otherwise, based upon his unpreserved claims that the trial court took the case from the jury too soon after answering the last question and that the trial court should have instructed with the Allen charge."  OCCA Summary Opinion at 6 (citing *Allen v. United States*, 164 U.S. 492

(1896)).[15]   The OCCA found that "[t]he time for deliberations was not unreasonable and there was no abuse of discretion in this regard."   *Id*.   The OCCA further found that Petitioner failed to show "that the jury was distracted in its sentencing deliberations either from the trial court's failure to give an *Allen* charge or in the Court's decision to take the case from the jury after confirming on the record that the jury was deadlocked as to punishment."   *Id*. at 6-7.

State law determines the extent of a petitioner's constitutional right to be sentenced by a jury.   *See Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980); *see also Drennon v. Hess*, 642 F.2d 1204, 1205 (10th Cir. 1981) ("[T]he extent of [an] appellant's constitutional right to be sentenced by a jury turns on the extent to which the Oklahoma state legislature has created such a right.").   Oklahoma law generally provides for sentencing by a jury.   Okla. Stat. tit. 22, § 926.1.   As set forth, however, Oklahoma law further provides for sentencing by a judge "[w]here the jury finds a verdict of guilty, and fails to agree on the punishment to be inflicted[.]"   Okla. Stat. tit. 22, § 927.1.   Here, as the OCCA found, the trial court took the case from the jury, pursuant to § 927.1, upon determining the jury had reached a verdict as to guilt but was deadlocked as to punishment.   The OCCA found the trial judge did not abuse his discretion in doing so.   *See* OCCA Summary Op. at 7-8.   Because the

---

[15] "An *Allen* instruction is, in effect, a charge given by a trial court that encourages the jury to reach a unanimous verdict so as to avoid a mistrial."   *United States v. McElhiney*, 275 F.3d 928, 935 (10th Cir. 2001).

OCCA determined the trial judge complied with state law, Petitioner fails to demonstrate a violation of his constitutional rights.[16]

To the extent Petitioner seeks habeas relief based on the trial judge's failure to give an *Allen* charge he has "not cited any case where a court has held that the failure to give an *Allen* charge is a constitutional error." *White v. Medina*, 464 Fed.Appx. 715, 719 (10th Cir. 2012) (recognizing that *giving* an *Allen* charge may, in some circumstances be unconstitutionally coercive but noting the lack of any authority to support that *failing to give* an *Allen* charge gives rise to constitutional error). Moreover, for the reasons previously set forth, Petitioner has failed to establish the OCCA's determination that the trial judge's decision to impose sentencing was not prejudicial constitutes an unreasonable determination of the facts in light of the evidence presented. This ground for relief, therefore, is denied.[17]

---

[16] Moreover, although the parties cite *Hicks* in addressing this claim, it appears that *Hicks* does not serve as clearly established federal law under § 2254(d)(1). *Cf. Mitchell v. Sharp*, 798 F. App'x 183, 197-198 (10th Cir. 2019) (recognizing that even though *Hicks* and the case before it "both involved due process challenges to jury sentencing proceedings" the cases were "materially different" and because "[g]eneral principles" do not provide "clearly established law under the AEDPA" the claim failed under the "threshold inquiry" and ended the court's analysis under § 2254(d)(1)).

[17] To the extent Petitioner seeks, as alternative relief, a modification of his sentence, such relief is not available on habeas review. Petitioner's sentence is not constitutionally excessive – an issue raised by Petitioner and rejected by the OCCA and an issue addressed by the Magistrate Judge and found to be without merit. *See* R&R at 19-20. Petitioner did not raise any objection to the R&R regarding the findings that his sentence is not constitutionally excessive. Moreover, as set forth, Petitioner's sentence was within the sentencing range provided by state law. *See Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000) (noting that sentencing claims "are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law").

## C.     Ground Three (In Part) Ineffective Assistance of Counsel

In his Objection, Petitioner argues that his counsel was ineffective for failing to challenge "on direct appeal" the bailiff's improper communication and the trial court's action in taking the case from the jury for sentencing.  But Petitioner's appellate counsel not only raised these issues in the course of Petitioner's direct appeal, but successfully obtained an evidentiary hearing with respect to these issues.  Thus, Petitioner fails to state any valid grounds for an ineffective assistance of counsel claim in his Objection and Petitioner has otherwise waived any challenge to the Magistrate Judge's findings with respect to the ineffective assistance of counsel claims he did raise.

Nonetheless, out of an abundance of caution, the Court considers the Magistrate Judge's findings with respect to ineffective assistance of trial counsel on this issue. The Magistrate Judge found the OCCA "identif[ied] the correct standard for reviewing Petitioner's ineffective-assistance-of-counsel claims" and "gave them short shrift: 'Appellant fails to show that trial counsel was ineffective for the claims of ineffectiveness that are based on the existing record.'"  R&R at 17 (citing OCCA Summary Opinion at 9). The Magistrate Judge concluded that the OCCA's finding that Petitioner could not show prejudice by counsel's failure to object is neither contrary to nor an unreasonable application of *Strickland*.  *Id*. at 18.

*Strickland v. Washington*, 466 U.S. 668 (1984), is the clearly established federal law governing Petitioner's ineffective assistance of counsel claim.  As the Magistrate Judge found, the OCCA applied *Strickland* in rejecting Petitioner's claim on direct appeal.  *See* OCCA Summary Opinion at 8.  *Strickland* requires a two-part showing: (1) counsel's

23

performance was deficient; and (2) prejudice, i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*., 466 U.S. at 694. "When a habeas petitioner alleges ineffective assistance of counsel, deference exists both in the underlying constitutional test (*Strickland*) and the AEDPA's standard for habeas relief, creating a 'doubly deferential judicial review.'" *Harris v. Sharp*, 941 F.3d 962, 973-74 (10th Cir. 2019) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

As set forth, Petitioner has failed to demonstrate prejudice arising from the trial judge's decision to sentence Petitioner, after determining the jury was deadlocked. Thus, Petitioner has failed to show that had counsel objected, a reasonable probability exists that the result of the proceedings would have been different. Accordingly, Petitioner fails to show that the OCCA's decision is contrary to or an unreasonable application of *Strickland*.

## V.    <u>Conclusion</u>

For the reasons set forth, upon de novo review of the matters to which an objection has been made, the Court finds Petitioner is not entitled to habeas relief under 28 U.S.C. § 2254. Further, the Report and Recommendation is ADOPTED as to those matters to which no objection is made. The Petition, therefore, is DENIED. A separate judgment shall be entered.

IT IS FURTHER ORDERED that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a petitioner. A COA may issue only upon "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). "A

petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration, the Court finds the requisite standard is not met in this case. Therefore, a COA is DENIED.

IT IS SO ORDERED this 7th day of July, 2022.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE